IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ALICE RIOS HUERTA,<br>Plaintiff,<br><br>v.<br><br>ANDREW SAUL, COMMISSIONER<br>OF SOCIAL SECURITY<br>ADMINISTRATION,<br>Defendant. | § § § § § § § § § § § | CIVIL ACTION NO. 4:19-CV-1064-Y |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate are as follows:

**FINDINGS AND CONCLUSIONS**

**I. STATEMENT OF THE CASE**

Plaintiff Alice Rios Huerta ("Huerta") filed this action pursuant to Section 405(g) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security terminating her disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). In a decision dated May 23, 2011, Huerta was found disabled beginning on April 19, 2011. (Transcript ("Tr.") at 16.) After a disability review, the SSA, on March 18, 2015, found that Huerta was no longer disabled, effective March 1, 2015. (Tr. 16, 66-68, 75-78.) This determination was upheld on reconsideration. (Tr. 16, 79-93.) Huerta then requested a hearing before an administrative law judge ("ALJ"). (Tr. 16, 94-97.) On October 15, 2018, a hearing was

1

held before the ALJ, and, on February 27, 2019, the ALJ found that Huerta's disability ended on March 1, 2015 and Huerta had not become disabled again since that date. (Tr. 14-25, 32-65.) Huerta then filed a written request for review of the ALJ's decision to the Appeals Council. (Tr. 154-60.) On October 28, 2019, the Appeals Council denied Huerta's request, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1-6.)

## II. STANDARD OF REVIEW

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards, and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if *no* credible evidentiary choices or medical findings support the decision. *Id.* (emphasis added). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollis v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. Jun. 2, 2009). This Court may neither reweigh the evidence in the record, nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

If a recipient is entitled to DIB, his or her continued entitlement to those benefits must be reviewed periodically. *See* 20 C.F.R. § 404.1594(a). For disabled adults, the Commissioner must determine if there has been "medical improvement" in the recipient's impairments and, if so,

whether this medical improvement is related to the recipient's ability to work. *See* 20 C.F.R. § 404.1594(a). "Medical improvement" is any decrease in the medical severity of a recipient's impairments which was present at the time of the most recent favorable medical decision that the claimant was disabled or continued to be disabled. 20 C.F.R. § 404.1594(b)(1). "A determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs, and/or laboratory findings associated with [the recipient's] impairment(s)." *Id.* The "most recent favorable medical decision is the latest decision involving a consideration of the medical evidence and the issue of whether [a claimant/recipient was] disabled or continued to be disabled which became final." 20 C.F.R. § 404.1594(b)(7). This decision is also known as the "comparison point decision" or "CPD." *Ball v. Berryhill*, No. 18-4750, 2019 WL 2079841, at *3 (E.D. La. Feb. 27, 2019).

In determining whether medical improvement occurred, an ALJ is tasked with comparing the current medical severity of the recipient's impairments which was present at the time of the CPD to the medical severity of those same impairments at the time the CPD was rendered. 20 C.F.R. § 404.1594(c)(1). If medical improvement has occurred, the ALJ must compare the recipient's current functional capacity to do basic work activities (*i.e.*, his or her residual functional capacity) based on the previously existing impairments with the recipient's prior residual functional capacity in order to determine whether the medical improvement is related to the recipient's ability to do work. 20 C.F.R. § 404.1594(c)(2).

The Commissioner has promulgated regulations that provide procedures for evaluating continued disability. *See* 20 C.F.R. § 404.1594. The regulations include a multi-step evaluation process for determining whether a disability benefit recipient continues to be disabled. *See* 20 C.F.R. § 404.1594(f). These steps, as relevant here, are as follows:

(1) whether recipient is engaging in substantial gainful activity;

(2) if not engaging in substantial gainful activity, whether the claimant has an impairment or combination of impairments which meets or equals a section in the Listing;

(3) if impairments do not meet or equal a listing, whether there has been medical improvement;

(4) if there has been medical improvement, whether the improvement is related to the claimant's ability to do work (*i.e.*, whether there has been an increase in the residual functional capacity ("RFC") based on the impairment(s) that was present at the time of the most favorable medical determination);

(5) if medical improvement is related to the claimant's ability to do work, whether the claimant has a severe impairment; and

(6) if the claimant has a severe impairment, whether the claimant can perform past relevant work; if so, disability will be found to have ended.

20 C.F.R. § 404.1594(f).

"Even though the burden of proving disability is on the claimant, 'once evidence has been presented which supports a finding that a given condition exists it is presumed in the absence of proof to the contrary that the condition has remained unchanged.'" *Smith v. Comm'r of Soc. Sec.*, No. 3:16CV212-RP, 2017 WL 2292795, at *2 (N.D. Miss. May 24, 2017) (quoting *Buckley v. Heckler*, 739 F.2d 1047, 1049)). "In other words, once benefits have been awarded, the claimant is afforded a 'presumption of continuing disability that requires the Secretary to provide evidence' that the claimant's condition has improved." *Smith*, 2017 WL 2292795, at *2 (quoting *Taylor v. Heckler*, 742 F.2d 253, 255 (5th Cir. 1984)). The Commissioner must also weigh the facts which formed the basis for the prior determination of disability with the Commissioner's new evidence and any additional evidence submitted by the claimant. *Smith*, 2017 WL 2292795, at *2. In termination proceedings, the ultimate burden of proof lies with the Secretary. *Griego v. Sullivan*, 940 F.2d 942, 944 (5th Cir. 1991).

## III. ISSUES

In her brief, Huerta presents the following issue: Whether the ALJ erred in finding that Huerta experienced medical improvement in her condition by failing to consider all of the mental functional limitations found by a psychological consultative examiner in determining Huerta's RFC and, subsequently, that Huerta could perform her past relevant work. (Plaintiff's Brief ("Pl.'s Br.") at 1, 5-9.)

## IV. ALJ DECISION

In a decision dated May 23, 2011, Huerta was found disabled beginning April 18, 2011. Thereafter, on March 18, 2015, the SSA determined that Huerta was no longer disabled, effective March 1, 2015. On February 27, 2019, the ALJ upheld the March 18, 2015 decision by the SSA that Huerta was no longer disabled, effective March 1, 2015. In making this determination, the ALJ found that the most favorable medical decision finding that Huerta was disabled was the decision dated May 23, 2011, which is known as the CPD. (Tr. 18.) At the time of the CPD, Huerta had the following medically determinable impairments: "breast carcinoma and metastatic breast cancer to the brain, status-post a secondary malignant neoplasm of the brain and spinal cord, and obesity." (Tr. 18.) Such impairments were found to have met section 13.10B of the Listing. (Tr. 18.)

The ALJ next found that Huerta did not engage in substantial gainful activity through the date of his decision. (Tr. 18.) He also found that the medical evidence established that Huerta did not develop any additional impairments and continued to have the same impairments from the CPD date through the date of his decision. (Tr. 18.) Next, the ALJ found that, since March 1, 2015, Huerta had not had an impairment or combination of impairments that met or equaled a section in the Listing. (Tr. 18.) Thereafter, the ALJ found that: (1) medical improvement occurred

on March 1, 2015; (2) the medical improvement was related to Huerta's ability to work; and (3) since March 1, 2015, Huerta no longer had an impairment or combination of impairments that met or was medically equivalent to the severity of one of the listed impairments in the Listing. (Tr. 18-19.)

The ALJ further found that Huerta continued to have the "severe" impairment of obesity. (Tr. 19.) As to any mental impairments, the ALJ analyzed Huerta's mental functioning under the "paragraph B" criteria and ultimately found that Huerta's anxiety was not severe nor that Huerta suffered from any severe mental impairment.[1] (Tr. 20-21.) As to Huerta's RFC, the ALJ stated:

> Since March 1, 2015, the claimant has retained the residual functional capacity to lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; sit throughout an 8-hour workday; stand or walk (individually or in combination) 2 to 4 hours throughout an 8-hour workday; and otherwise perform the full range of light work, except: She can only occasionally balance, stoop, kneel, crouch, crawl, or climb ladders, scaffolds, ropes, ramps, or stairs.

(Tr. 21 (emphasis omitted).)

At the next step, the ALJ found that Huerta, since March 1, 2015, was capable of performing her past relevant work as a legal secretary. (Tr. 24-25.) Consequently, the ALJ concluded that Huerta's disability ended on March 1, 2015 and she has not become disabled again since that date. (Tr. 25.)

## V. DISCUSSION

### A.   RFC Determination

In her brief, Huerta claims that the ALJ erred in finding that Huerta experienced medical improvement in her condition by failing to consider all of the functional limitations found by a psychological consultative examiner and a social security claims representative in determining

---

[1] The ALJ specifically found that Huerta had no limitations in any of the following four areas of mental functioning known as the "paragraph B" criteria: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; or (4) managing oneself. (Tr. 20-21.)

Huerta's RFC and, subsequently, that Huerta could perform her past relevant work. (Pl.'s Br. at 1, 5-9.) Specifically, Huerta states:

> The Commissioner's consultative examiner, Donald Baer, MA, administered specific psychological tests, which found that the Plaintiff's verbal comprehension was within the extremely low range; her perceptual reasoning was within the low average range; but her working memory, processing speed, and full scale IQ were within the borderline range. (Tr. 368). Testing also found that the Plaintiff's word reading and math computation were below the 5th grade level. (Id.). Indeed, the hearing transcript indicates that in describing her memory deficits, the Plaintiff reported to the ALJ[,] "I forgot what I was going to tell you" (Tr. 50). A social security claims representative found that Ms. Huerta had difficulty with understanding, coherency, concentrating, talking and answering, noting that she would randomly answer something else not related to the question (Tr. 185). The ALJ failed to note this observation of the Social Security claims representative, despite the Commissioner's policy statement that observations of agency personnel should be considered (Social Security Ruling 16-3p).

(Pl.'s Br. at 6-7.)

As to the ALJ's finding that Huerta could perform her past relevant work as a legal secretary, Huerta argues that the ALJ failed to undertake a function-by-function assessment of all of the Plaintiff's limitations in determining her RFC as required by Social Security Ruling ("SSR") 96-8p. In addition, Huerta states:

> The psychological consultative examination establishes that the Plaintiff's reading level was at the 3rd percentile, below 5th grade level (Tr. 368). Further, her working memory and processing speed were within the borderline range, at the 4th and 5th percentiles, respectively (Id.). The ALJ never questioned the vocational witness as to whether an individual with the deficits noted by the consultative examiner can successfully perform the job of legal secretary, either as the Plaintiff performed it in the past or as generally perform[ed] throughout the national economy. . . .
>
> . . . .
>
> Here, the ALJ failed to consider the limitations determined by the Commissioner's own consultative examiner. Hence, the ALJ's residual functional capacity assessment was deficient, does not fairly and accurately reflect Plaintiff's

functional abilities, and a determination based upon such deficient assessment is not supported by substantial evidence.

(Pl.'s Br. at 7-9.)

An individual's RFC describes what an individual can do despite her limitations. SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2.

RFC is not the least an individual can do but the most. *Id.* The RFC is a function by function assessment, with both exertional and non-exertional factors considered, and is based on all of the relevant evidence from the record. *Id.* at *3-6. The ALJ determines a claimant's RFC. *See Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. §§ 404.1529; SSR 16-3p, 2017 WL 5180304, at *1 (S.S.A. Oct. 25, 2017); SSR 96-8p, 1996 WL 374184, at *5. The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as fact finder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.").

In this case, in making the severity and the RFC determination, the ALJ stated:

> The claimant's medically determinable mental impairment of anxiety does not cause more than a minimal limitation in the claimant's ability to perform basic mental work activities and therefore is not "severe."
>
> . . . .
>
> Because the claimant's mental impairment causes no more than a mild limitation in any of the functional areas, it is not "severe" (*See* 20 CFR 404.1420a(d)(1)). I also found that her mental impairment is not "severe" under the standard set forth in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985).
>
> . . . .
>
> My finding regarding Ms. Huerta's residual functional capacity was supported by the objective evidence and the claimant's medical treatment history. As noted above, on May 14, 2015, the claimant presented for a psychological consultative examination [with Donald Baer, M.A. ("Baer")].[2] Here, the claimant presented appropriately groomed. She related with the examiner in a pleasant manner. On mental status examination, the claimant reported she was in a good mood. Her emotional responses were reactive and congruent with the subjects under discussion. She appeared to have accurate recall of specific details of remote events. She recalled a maximum of six digits in order. Her thinking was logical and goal-directed. There were no indications of hallucinations, delusions, or homicidal or suicidal ideation. Her insight and judgment were considered good. The claimant was administered the Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV), which testing indicated her full[-]scale IQ was within the borderline range. However, the examiner stated the claimant did not meet criteria for Borderline Intellectual Functioning because her adaptive behavior skills were not significantly impaired. Her memory abilities indicated she was not experiencing a significant memory impairment. Her cognitive speed and flexibility were not impaired. The examiner concluded the claimant had no medically determinable mental impairment (Exhibit 7F).
>
> . . . .
>
> On December 29, 2017, the claimant reported she was doing well. She stated she rarely took her pain medication (Exhibit 11F, page 7). Her performance status was that she was able to carry on all pre-disease activities *without restrictions*. On physical examination, the claimant was alert and oriented. Her body mass index was calculated at 41.4 kg/m2. She exhibited coherent speech. Her extremities were normal, with no visible deformities, cyanosis, clubbing, or edema. There were no sensory or motor deficits. The claimant exhibited normal

---

[2] The Court notes that Baer is listed as the "Examiner" but that the written Psychological evaluation is signed by both Baer and Jeanne Curtis, Psy.D., who is listed as the "Supervising Psychologist." (Tr. 366, 370.)

cerebellar function and a normal gait. Her cranial nerves were intact (Exhibit 11F, page 18).

On September 7, 2018, the claimant presented for Herceptin treatment. She reported that, overall, she was doing well. She continued to report some anxiety but no pain or muscle weakness (Exhibit 11F, page 2). The assessment noted there was no evidence of disease (Exhibit 11F, page 3).

At the hearing, the claimant testified as follows: Her speech is her main problem that interferes with her ability to work. If she talks a lot, her jaws lock up. She bites herself inside her cheek on the right side. These episodes occurred when she became upset, like when her mother passed away. She has pain on the top of her head, on the left. She sometimes has problems with her speech during the day. She cannot speak Spanish anymore: the words will not come out. Her speech sometimes is slurred. She is forgetful. She has to write down everything so she can remember. She has back pain, which she attributes to a spinal tap she had during her brain surgery. She has severe abdominal pain, which subsides after she lies down for 30 minutes to an hour. Her hands lock up. She sometimes cannot dress herself because her hands hurt so much. She is afraid to follow-up with [a] specialist, because she is scared they will find something else. She had brain tumors removed in April 2011 with no recurrence. She has been on medication for anxiety since 201 [sic]. She was not hospitalized (meaning admitted one or more nights) since March 2015. . . .

. . . .

In terms of the claimant's alleged status-post malignant neoplasm of the breast, brain, and spinal cord, the medical evidence suggested the claimant's symptoms may not be accurately reported and may not exist at the level of severity assumed by the claimant's testimony at her hearing. The claimant testified to a large number of symptoms and conditions that appeared to have been raised for the first time at the hearing level. However, the medical evidence showed the claimant continuously had normal physical examinations and reported she was doing well (*See, e.g.*, Exhibit 4F, page 4, and Exhibit 11F, pages 18 and 38). Furthermore, it consistently was noted the claimant's performance status was the claimant was able to carry on all pre-disease activities without restrictions (*See, e.g.*, Exhibit 11F, pages 18, 21, 24, 27, 33, 36, 39, 57, and 63). In addition, the medical evidence showed the claimant had no evidence of disease via MRI's of her brain (Exhibit 6F, page 3, and Exhibit 4F, page 60), mammogram (Exhibit 4F, page 59), and assessment subsequent to a normal physical examination (Exhibit 11F, page 3). Therefore, although the claimant received various forms of treatment for her allegedly disabling symptoms, which would normally weigh somewhat in the claimant's favor, the evidence also revealed that treatment has been generally successful in controlling those symptoms.

>       Furthermore, despite her impairments, the claimant has engaged in a rather normal level of daily activity. For example, the claimant admitted taking care of her mother (Exhibit 11F, pages 8, 11, and 14), cooking for her parents' 59th anniversary (Exhibit 11F, page 53), and walking for exercise (Exhibit 11F, pages 23, 62, and 71). Some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment. The claimant's ability to participate in such activities is inconsistent with the claimant's allegations of disabling functional limitations.
>
>       . . . .
>
>       I must consider the opinions of the State agency medical consultants who evaluated this issue for cessation during the administrative review process, pursuant to 20 CFR [§] 404.1513a and SSR 17-2p. I gave the initial opinion concerning the claimant's residual functional capacity very significant weight (Exhibit 5F). In addition, I gave the reconsideration opinion concerning the claimant's residual functional capacity very significant weight (Exhibit 9F). On reconsideration the State agency medical consultant concluded there was no medically determinable mental impairment, which I gave very significant weight. I concluded that opinion was correct when rendered. But based on more current treatment records, I found that anxiety is a medically determinable impairment in this case (*See, e.g.*, Exhibit 11F, page 3). In this case, those opinions were persuasive, well supported, and consistent with the medical evidence.
>
>       I determined that the claimant's symptoms have no substantial effect on her ability to work beyond the functional limitations and restrictions indicated by the medical evidence (*See* SSR 96-8p). The claimant is appropriately limited to light work due to the minimal findings on her physical examinations and the lack of findings on objective evidence. I included postural limitations in the above residual functional capacity based on the claimant's obesity. The claimant's allegations, including her testimony, were not persuasive, because they were not supported by or consistent with the medical evidence. Therefore, I found that her exertional and nonexertional capabilities are compromised, but not to the degree alleged.

(Tr. 20-24.)

As to his finding that Huerta was capable of performing her past relevant work as a legal secretary, the ALJ stated:

>       The vocational expert testified the claimant had past work as a legal secretary (*Dictionary of Occupational Titles* Number 201.362-010), which is sedentary in exertion with a Specific Vocational Preparation of 6. . . .

> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, I found that the claimant has been able to perform it, both as actually performed by the claimant and as this occupation is generally performed in the national economy. . . . Although the claimant alleged mental health symptoms that affected her ability to work, I found that mental impairment is not "severe" and does not preclude her from performing her past work as a legal secretary (for example, the psychological consultant examiner did not find any mental health impairment (Exhibit 7F). . . .

(Tr. 24-25.)

Based on the foregoing, it is clear that the ALJ properly considered the opinions of Baer in determining that Huerta did not suffer from any severe mental impairments, in formulating Huerta's RFC determination, and in finding that Huerta was capable of performing her past relevant work. The ALJ, on multiple occasions referred to or analyzed Baer's May 14, 2015 consultative examination of Huerta at all steps of the decision process. (*See* Tr. 20-25.) While the ALJ did not mention every specific finding of Baer, such specific detail is not required. *See Rollins v. Astrue*, 464 F. App'x 353, 356 (5th Cir. 2012); *Ciccotti v. Astrue*, No. SA-09-969-XR, 2010 WL 3022775, at *11 (W.D. Tex. July 28, 2010) ("[T]hough the ALJ must articulate the weight given to medical opinions, mention of specific findings is not necessary if the ALJ shows he considered the medical findings.")

The ALJ specifically noted that Baer administered the WAIS-IV to Huerta and that such testing indicated her full-scale IQ was within the borderline range. (Tr. 20-22.) The ALJ also discussed some of Baer's findings: (1) that Huerta did not meet the criteria for Borderline Intellectual Functioning because her adaptive behavior skills were not significantly impaired; (2) that Huerta's memory abilities indicated she was not experiencing a significant memory impairment; and (3) that Huerta's cognitive speed and flexibility were not impaired. (Tr. 22.) In fact, even after noting all of Huerta's scores and testing results, Baer himself concluded that Huerta had no medically determinable mental impairment and Huerta's prognosis was good. (*See* Tr.

368-70.) Based, *inter alia*, on Baer's examination, the ALJ found that Huerta did not suffer from any severe mental impairments, and consequently, did not include any mental limitations in the RFC determination. (Tr. 21.)

In this case, the ALJ properly considered the evidence as a whole, utilizing not only the opinions of Baer, but also the other medical evidence in the record that included opinions from the SAMCs, several doctors, treatment notes, and the testimony of Huerta, to determine Huerta's RFC. The ALJ discussed the evidence in the record in making his RFC determination, adequately explained the reasoning for such determination and for giving less weight to certain evidence, and exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *See, e.g.*, *Muse*, 925 F.2d at 790. Because there is substantial evidence in the record that supports the ALJ's RFC determination, the Court concludes that remand is not required as to this issue.[3]

As to Huerta's claim that the ALJ erred in failing to consider a statement made by a social security claims representative as required by SSR 16-3p, the Court notes that Huerta totally fails to detail the specifics of this argument or pinpoint the specific section of SSR 16-3p that Huerta is relying on for this claim. (*See* Pl.'s Br. at 4, 7-8.) A review of SSR 16-3p, which relates to evaluation of symptoms in disability claims, indicates that if an ALJ "cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence," then the ALJ should "carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms." SSR 16-3p, 2017 WL

---

[3] In addition, because the ALJ's decision that Huerta could perform her past relevant work as a legal secretary was based on an RFC determination that was supported by substantial evidence, the ALJ did not err in making this past relevant work determination.

5180304, at *6 (S.S.A. Oct. 25, 2017). "Other evidence" includes any sources that might have information about the individual's symptoms, including agency personnel. *Id.*

In this case, the ALJ, citing to SSR 16-3p, specifically found that Huerta's medically determinable impairments could have reasonably been expected to produce only some of her alleged symptoms but that Huerta's statements concerning the intensity, persistence, and limiting effects of these symptoms were not supported by the objective medical evidence and other reliable evidence, and were not persuasive. (Tr. 23.) While the ALJ did not specifically cite to the statement of the social security representative mentioned by Huerta, any such error is harmless as there is plenty of evidence in the record supporting the ALJ's decisions regarding Huerta's evaluation of her symptoms. *See Towner v. Berryhill*, No. 3:18CV459 DPJ-LRA, 2019 WL 3539817, at *5 (S.D. Miss. July 17, 2019 (stating that claimant is only entitled to relief for violation of an SSR if claimant can establish he was been prejudiced by the alleged error); *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000) (holding that an ALJ's violation of a SSR is only reversible error if the claimant shows prejudice from the violation); *see also Smith v. Astrue*, No. 4:09-CV-494-A, 2010 WL 6268443, at *9 n.8 (N.D. Tex. Sept. 20, 2010) ("Even assuming that the ALJ did not perform the function-by-function analysis required by SSR 96-8P and SSR 85-15, any error is not prejudicial as there is no indication that the ALJ's determination would have changed had he done so and substantial evidence supports the ALJ's mental RFC determination."). Because procedural perfection in an administrative proceeding is not required and the ALJ's RFC determination is supported by substantial evidence, remand is not required.

## **RECOMMENDATION**

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **March 23, 2021** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED March 9, 2021.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv